UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

L.J., *individually and on behalf of* D.S., *a child with a disability*,

                              Plaintiff,

                    -v.-

NEW YORK CITY DEPARTMENT OF EDUCATION,

                              Defendant.

---

20 Civ. 10672 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff L.J., individually and on behalf of D.S., a child with a disability, brought this action pursuant the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §§ 1400-1482.  Pending before the Court is Plaintiff's motion for summary judgment, seeking injunctive relief as well as attorneys' fees and costs for work performed by Plaintiff's counsel, the Cuddy Law Firm ("CLF"), in connection with an administrative proceeding and this related federal action.  For the reasons set forth in the remainder of this Opinion, the Court focuses on Plaintiff's request for fees and costs and grants that request in part.

**BACKGROUND**[1]

**A.     The Parties and the Administrative Proceedings**

D.S. is a child with a disability as defined by the IDEA, 20 U.S.C. § 1401(3)(A) (Pl. 56.1 ¶ 2), and L.J. is D.S.'s parent (*id.* ¶ 3).  Defendant New

---

[1]     The facts set forth in this Opinion are drawn from the parties' submissions in connection with Plaintiff's summary judgment motion, including Plaintiff's statement of undisputed material facts pursuant to S.D.N.Y. Local Civil Rule 56.1 ("Pl. 56.1" (Dkt. #51)), and Defendant's Rule 56.1 counterstatement ("Def. 56.1" (Dkt. #67)).  The Court

York City Department of Education ("Defendant" or "DOE") is a local educational agency (or "LEA") as defined by the IDEA, 20 U.S.C. § 1401(19). (*Id.* ¶ 4).

### 1.   The First Administrative Proceeding ("IH 172136")

While the instant litigation concerns the *second* administrative proceeding initiated by Plaintiff, a brief summary of the first is provided for context.  On January 19, 2018, Plaintiff sought an impartial due process hearing on behalf of D.S., alleging Defendant's denial of a free appropriate public education ("FAPE") to D.S. during the 2016-2017 and 2017-2018 school years; the matter was assigned Case Number 172136.  (Pl. 56.1 ¶¶ 5-6).  After appointment of an Impartial Hearing Officer ("IHO"), in March 2018, the parties entered into a partial resolution agreement, pursuant to which Defendant would fund a neuropsychological evaluation and the relevant Committee on

---

also draws from various declarations submitted by the parties and their exhibits, which declarations are cited using the convention "[Name] Decl." or "[Name] Reply Decl.," and from the Complaint (Dkt. #1).

Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein.  Where a fact stated in a movant's Rule 56.1 Statement is supported by evidence and controverted only by a conclusory statement by the opposing party, the Court finds that fact to be true.  *See* Local Civil Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be submitted by the opposing party."); *id.* at 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."). As relevant here, to the extent Defendant has simply announced that it disputes Plaintiff's proffered undisputed facts, without identifying any evidence that controverts those facts, this Court accepts Plaintiff's facts as true.  (*See, e.g.*, Def. 56.1 ¶¶ 29, 31, 33-36).

For ease of reference, the Court refers to Plaintiff's opening brief as "Pl. Br." (Dkt. #52); to Defendant's opposition brief as "Def. Opp." (Dkt. #68); and to Plaintiff's reply brief as "Pl. Reply" (Dkt. #71).

Special Education (the "CSE") would reconvene and recommend appropriate services and placement after all assessments were provided. (*Id.* ¶¶ 8-9). An interim order was issued on August 13, 2018, requiring Defendant to authorize an Independent Educational Evaluation ("IEE")[2] or a Functional Behavior Assessment ("FBA").[3] (*Id.* ¶¶ 12-14). An FBA was conducted in November 2018, and the parties ultimately resolved the fees and costs component of that matter. (*Id.* ¶¶ 15-16).

### 2. The Second Administrative Proceeding ("IH 183334")

The instant lawsuit arises from Plaintiff's second due process complaint. On June 3, 2019, Plaintiff filed a due process complaint claiming the denial of a FAPE to D.S. for the 2018-2019 and 2019-2020 school years. (Pl. 56.1 ¶ 17; Kopp Decl., Ex. D). In the eight-page document, Plaintiff sought, among other forms of relief, that the IHO (i) compel Defendant to conduct an assistive technology ("AT") evaluation,[4] fund the preparation of a behavior intervention plan ("BIP"),[5] and provide D.S. with compensatory academic services and

---

[2]   "[An i]ndependent educational evaluation means an evaluation conducted by a qualified examiner who is not employed by the public agency responsible for the education of the child in question[.]" 34 C.F.R. § 300.502.

[3]   A "functional behavioral assessment" is a "process for identifying the events that predict and maintain patterns of problem behavior." 32 C.F.R. § 57.3.

[4]   "[An a]ssistive technology device means any item, piece of equipment, or product system, whether acquired commercially off the shelf, modified, or customized, that is used to increase, maintain, or improve the functional capabilities of a child with a disability. The term does not include a medical device that is surgically implanted, or the replacement of such device." 34 C.F.R. § 300.5.

[5]   While the IDEA does not specifically define the term "behavior intervention plan," it directs the CSE to "consider the use of positive behavioral interventions and supports, and other strategies," to address a student's behavior that "impedes the child's learning or that of others." 20 U.S.C. § 1414(d)(3)(B)(i); *see also* 34 C.F.R. § 300.324(a)(2)(i).

compensatory counseling; (ii) compel the CSE to reconvene and develop an updated individualized education program ("IEP");[6] and (iii) issue directives to Defendant in connection with an appropriate school placement for D.S.  (Kopp Decl., Ex. D at 6-8).  Plaintiff also sought payment of reasonable attorneys' fees and costs incurred in the matter.  (*Id.* at 8).

Suzanne Carter was appointed as the IHO on June 6, 2019.  (Pl. 56.1 ¶ 22).  However, the path to a hearing was not without its bumps.[7]  On November 4, 2019, the parties met for a pre-hearing conference before IHO Carter, and on November 19, 2019, Defendant's Impartial Hearing Office scheduled the hearing to take place on January 29, 2020.  (*Id.* ¶¶ 26-29).  However, on January 17, 2020, defense counsel requested an adjournment for personal reasons, which request the IHO granted over Plaintiff's objections.  (*Id.* ¶¶ 30-32).  As the parties discussed the rescheduling of the hearing, Plaintiff's counsel floated the possibility of a summary judgment motion, while defense counsel equivocated on the length and contents of Defendant's case and the degree to which it would contest Plaintiff's factual assertions.  (*Id.* ¶¶ 33-39).  The IHO adjourned the hearing a second time on April 28, 2020.  (*Id.* ¶ 40).

---

[6]     *See generally* 34 C.F.R. § 300.320 (outlining requirements of individualized education program).

[7]     According to Plaintiff, the parties entered into a partial resolution in or about July 2019, pursuant to which Defendant agreed to conduct the AT evaluation and for the CSE to reconvene to discuss that evaluation.  (Pl. 56.1 ¶¶ 24-25).  Defendant disputes the characterization as a "partial resolution," but acknowledges that it agreed to conduct, and in fact conducted, the AT evaluation.  (Def. 56.1 ¶¶ 24-25).

On May 7, 2020, Plaintiff moved for summary judgment, but the IHO declined to consider the motion.  (Pl. 56.1 ¶¶ 41, 43).  A hearing of approximately two hours was convened on May 20, 2020, at which Defendant proffered 12 exhibits and the testimony of one witness and Plaintiff proffered 11 exhibits.  (*Id.* ¶¶ 46-47; *see also* Def. 56.1 ¶¶ 46-47).  The parties were unable to complete the hearing that day and, after updates from the parties, the proceedings resumed for approximately one hour on June 26, 2020.  (Pl. 56.1 ¶¶ 52-60; Def. 56.1 ¶¶ 56-57).  The parties submitted closing memoranda in July 2020.  (Pl. 56.1 ¶¶ 62-65; Def. 56.1 ¶ 64).

On September 9, 2020, IHO Carter issued her Findings of Fact and Decision (the "FOFD").  (Pl. 56.1 ¶ 66; Kopp Decl., Ex. G (FOFD)).  As a general matter, IHO Carter found that Defendant had failed to provide D.S. with a FAPE for both the 2018-2019 and the 2019-2020 school years.  (FOFD 2-4).  Indeed, Defendant conceded denial of a FAPE for the 2018-2019 school year, when D.S. was "placed in an ICT [integrated co-teaching] class that was inappropriate for his needs."  (*Id.* at 2).  While Defendant offered no similar concession for the 2019-2020 school year, IHO Carter found, among other things, that Defendant (i) "overinflated" D.S.'s "levels of performance for a predetermined outcome of recommending a 12:1:1 class, a violation of FAPE" (*id.* at 2-3); (ii) in the face of an FBA "that exhaustively detailed [D.S.'s] interfering behaviors that impeded learning[…,] willingly enabled [D.S.'s] avoidant behaviors" (*id.* at 3); and (iii) failed to provide meaningful related services (*id.* at 3-4).  The IHO ordered the CSE to reconvene and develop a new

IEP, and to defer D.S.'s case to the Central Based Support Team ("CBST") for an appropriate non-public school placement. (*Id.* at 5-6). In addition, the IHO ordered Defendant to provide (i) 800 hours of compensatory education at a rate not to exceed $125 per hour; (ii) MetroCards for roundtrip transportation; (iii) 48 hours of counseling with a licensed provider not to exceed $150 per hour; (iv) 96 hours of speech and language therapy ("SLT") at the chosen provider's prevailing rate; and (v) funding for an independent BIP addressing remote learning and in-school learning at the chosen provider's prevailing rate. (*Id.* at 6). Neither side appealed from the IHO's decision. (Kopp Decl. ¶ 28).

## B.     The Instant Lawsuit

Plaintiff filed the instant complaint on December 18, 2020. (Dkt. #1 ("Compl.")). In it, she listed the many ways in which Defendant had failed to abide by the IHO's decision. To begin, Plaintiff alleged that the CSE had failed both to reconvene and develop a more appropriate IEP or to defer D.S.'s case to CBST. (Compl. ¶¶ 78-79). Nor had Defendant provided Plaintiff with MetroCards. (*Id.* at ¶ 82). Of perhaps greatest concern, Plaintiff alleged that Defendant had not provided (or provided in full) compensatory education services, counseling, or SLT, nor had it funded the independent BIP. (*Id.* at ¶¶ 81, 83-85). Plaintiff sought an order of pendency, injunctive relief (in the form of compliance with the FOFD), and attorneys' fees and costs. Defendant filed its answer on February 25, 2021. (Dkt. #10).

In anticipation of the initial pretrial conference in this matter, the parties submitted a joint letter on April 1, 2021. (Dkt. #15). The letter reflected the

parties' divergent views concerning the need for discovery, with Plaintiff
asserting that discovery was necessary, among other reasons, to ensure
Defendant's compliance with the IHO's directives, and Defendant expressing its
hope "that the parties will be able to resolve Plaintiff's claims without further
proceedings, and without discovery," but opining in the alternative that
discovery would not be necessary even in the event of an impasse in the
parties' settlement negotiations. (*Id.* at 2-3). The initial pretrial conference was
held on April 7, 2021. (Minute Entry for April 7, 2021). One month later, on
May 7, 2021, the parties submitted a joint status letter explaining their efforts
to investigate and ensure compliance with the FOFD, and again presenting
their views on the utility of discovery. (Dkt. #16). The Court rejected Plaintiff's
request for "light discovery" and instead adopted Defendant's suggestion that
the parties be given an additional 30 days to attempt to resolve Plaintiff's
claims without discovery. (Dkt. #17).

After several extensions, the parties submitted their joint status report
on June 18, 2021. (Dkt. #24). This time, the Court adopted Plaintiff's
discovery schedule, while noting:

> The Court adopts Plaintiff['s] proposed case
> management deadlines. However, the Court takes
> seriously Defendant's contention that discovery is
> unnecessary and that Plaintiffs' own inaction is
> standing in the way of resolution of this matter. If the
> Court finds that Plaintiffs have unnecessarily
> protracted this litigation, that will be taken into account
> when awarding fees and costs in this matter.

(Dkt. #25). Unfortunately, the progress of discovery was halted by episodes of
non-compliance on Defendant's part, resulting in several conferences with the

Court and several extensions of the discovery deadlines.  (*See, e.g.*, Dkt. #28 ("The Court is troubled to learn that Defendant has failed to adhere to the deadlines set forth in the Case Management Plan."); Dkt. #32 ("If Plaintiffs' counsel's representations are to be credited (and defense counsel does not refute them), then defense counsel has demonstrated a disturbing lack of attention to this case that cannot continue in this or any other cases before the Court."); Dkt. #38 (resolving discovery disputes between the parties); Dkt. #57 (transcript of January 18, 2022 status conference to address Defendant's non-compliance with the Court's orders)).

A post-fact-discovery conference was held on February 22, 2022.  (Dkt. #59 (transcript)).  On the issue of implementation, the Court was advised that the parties' positions remained unchanged, *i.e.*, Defendant was willing to comply with the FOFD, but did not believe it had an obligation to locate service providers.  (*Id.* at 4-5).  While each side expressed hope that the matter could settle, the Court scheduled summary judgment briefing.  (Minute Entry for February 22, 2022).  Pursuant to that schedule, Plaintiff's opening submissions were filed on April 1, 2022 (Dkt. #50-54); Defendant's opposition submissions were filed on May 6, 2022 (Dkt. #64-68); and Plaintiff's reply submissions were filed on May 20, 2022 (Dkt. #71-72).

On January 18, 2023, the Court issued an order staying this case in light of a series of appeals taken by IDEA plaintiffs represented by CLF from fee petitions decided by district courts; several of these appeals had been consolidated and were then pending before the Second Circuit.  (Dkt. #78).

This Court directed the parties "to submit a joint letter within two weeks of the resolution of any Second Circuit appeal involving a CLF fee petition in an IDEA case." (*Id.* at 2).

The Second Circuit issued its decision in the consolidated CLF appeals on June 21, 2023.  *See H.C.* v. *N.Y.C. Dep't of Educ.*, 71 F.4th 120 (2d Cir. 2023).  The parties filed a joint letter on June 29, 2023, indicating their intention to revisit settlement discussions.  (Dkt. #80).  In consequence, the parties requested that the stay be lifted two weeks after the Court's endorsement of their letter, and agreed between themselves that supplemental briefing would not be necessary unless the Court required it.  (*Id.*; *see also* Dkt. #81 (endorsement dated June 30, 2023)).  On July 20, 2023, understanding that the parties had not reached agreement, the Court issued an order indicating its intent to consider Plaintiff's pending summary judgment motion. (Dkt. #82).

## DISCUSSION

As noted, the underlying complaint requests both injunctive relief and fees and costs.  However, because so much time has passed since the initial complaint was filed, and because the parties filed no supplemental briefing after the Second Circuit issued its decision in *H.C.*, the Court is unaware of the degree to which disputes regarding implementation of the FOFD's directives remain.  As a result, the Court addresses in this motion only the fee petition component of Plaintiff's summary judgment motion.  It will give both sides an

opportunity at a later date to file supplemental briefing to identify and discuss any remaining injunctive claims.

## A.  Applicable Law

### 1.  Motions for Summary Judgment Under Fed. R. Civ. P. 56

Pursuant to Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*; *see also Celotex Corp.* v. *Catrett,* 477 U.S. 317, 322-23 (1986).[8]  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (internal quotation marks and citation omitted).  A fact is "material" if it "might affect the outcome of the suit under the governing law[.]"  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

While the moving party "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact,'" *ICC Chem. Corp.* v. *Nordic Tankers*

---

[8]    The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").  The Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

*Trading a/s*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Celotex*, 477 U.S. at 323), the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *accord Brown* v. *Henderson*, 257 F.3d 246, 252 (2d Cir. 2001). Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Parks Real Est. Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

### 2. Attorneys' Fees Under the IDEA

#### a. The Purpose of the Fee-Shifting Provision

"The IDEA aims 'to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs.'" *A.R. ex rel. R.V.* v. *N.Y.C. Dep't of Educ.*, 407 F.3d 65, 72 (2d Cir. 2005) (quoting 20 U.S.C. § 1400(d)(1)(A)). To that end, the statute provides that "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). The fees awarded "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded[.]" *Id.* § 1415(i)(3)(C).

The construct of a "reasonable attorneys' fees" has been developed across multiple civil rights fee-shifting statutes. *See A.R.*, 407 F.3d at 75 ("[W]e

'interpret the IDEA fee provisions in consonance with those of other fee-shifting statutes.'" (quoting *I.B. ex rel. Z.B.* v. *N.Y.C. Dep't of Educ.*, 336 F.3d 79, 80 (2d Cir. 2003) (per curiam))); *see also S.N. ex rel. J.N.* v. *Pittsford Cent. Sch. Dist.*, 448 F.3d 601, 604 (2d Cir. 2006); *see generally Lilly* v. *City of New York*, 934 F.3d 222, 227-32 (2d Cir. 2019) (discussing the history of fee-shifting jurisprudence).  At its core, allowing attorneys' fees in a civil rights action "ensure[s] effective access to the judicial process for persons with civil rights grievances."  *Hensley* v. *Eckerhart*, 461 U.S. 424, 429 (1983).  "When a plaintiff succeeds in remedying a civil rights violation, ... he serves 'as a "private attorney general," vindicating a policy that Congress considered of the highest priority.'"  *Fox* v. *Vice*, 563 U.S. 826, 833 (2011) (quoting *Newman* v. *Piggie Park Enterps., Inc.*, 390 U.S. 400, 402 (1968) (per curiam)).  "[T]he fee-shifting feature of the IDEA — including the authority to award reasonable fees for the fee application itself — plays an important role in 'attract[ing] competent counsel' to a field where many plaintiffs with meritorious cases could not afford to pay such counsel themselves."  *G.T.* v. *N.Y.C. Dep't of Educ.*, No. 18 Civ. 11262 (GBD) (BCM), 2020 WL 1516403, at *10 (S.D.N.Y. Feb. 12, 2020) (quoting *Simmons* v. *N.Y.C. Transit Auth.*, 575 F.3d 170, 176 (2d Cir. 2009)), *report and recommendation adopted*, No. 18 Civ. 11262 (GBD) (BCM), 2020 WL 1503508 (S.D.N.Y. Mar. 30, 2020).

### b.    Determining a "Presumptively Reasonable Fee"

Attorneys' fees are typically awarded by determining the "'presumptively reasonable fee,'" often (if imprecisely) referred to as the "lodestar."  *Millea* v.

12

*Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see also Perdue* v. *Kenny A. ex rel. Winn*, 559 U.S. 542, 552-53 (2010); *H.C.*, 71 F.4th at 126 ("To calculate reasonable attorneys' fees under the IDEA, courts apply the 'lodestar' method."). This fee is calculated by multiplying the "reasonable hourly rate and the reasonable number of hours required by the case." *Millea*, 658 F.3d at 166. Courts may, only after the initial calculation of the presumptively reasonable fee, adjust the total when it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Lilly*, 934 F.3d at 230 (quoting *Millea*, 658 F.3d at 167). A district court possesses considerable discretion in awarding attorneys' fees. *See Millea*, 658 F.3d at 166; *see also Arbor Hill*, 522 F.3d at 190.

The Second Circuit clarified the process by which a district court determines the reasonable hourly rate in *Lilly* v. *City of New York*:

> [T]he district court, in exercising its considerable discretion, [should] bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate. The reasonable hourly rate is the rate a paying client would be willing to pay. In determining what rate a paying client would be willing to pay, the district court should consider, among others, the *Johnson* factors; it should also bear in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively. The district court should also consider that such an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with

13

> the case.   The district court should then use that
> reasonable hourly rate to calculate what can properly
> be termed the "presumptively reasonable fee."

*Lilly*, 934 F.3d at 230 (quoting *Arbor Hill*, 522 F.3d at 190).[9]   In this setting,

"the district court does not play the role of an uninformed arbiter but may look

to its own familiarity with the case and its experience generally as well as to the

evidentiary submissions and arguments of the parties."   *Bliven* v. *Hunt*, 579

F.3d 204, 213 (2d Cir. 2009) (quoting *DiFilippo* v. *Morizio*, 759 F.2d 231, 236

(2d Cir. 1985)).

   "To determine the reasonable hourly rate for each attorney, courts must

look to the market rates 'prevailing in the community for similar services by

lawyers of reasonably comparable skill, experience, and reputation.'"   *Heng*

*Chan* v. *Sung Yue Tung Corp.*, No. 03 Civ. 6048 (GEL), 2007 WL 1373118, at *2

(S.D.N.Y. May 8, 2007) (quoting *Gierlinger* v. *Gleason*, 160 F.3d 858, 882 (2d

Cir. 1998)).   The Second Circuit's "forum rule" requires courts to "generally use

'the hourly rates employed in the district in which the reviewing court sits' in

calculating the presumptively reasonable fee."   *Simmons*, 575 F.3d at 174

(quoting *Arbor Hill,* 493 F.3d at 119).

---

[9]     The twelve factors enumerated in *Johnson* are: (i) the time and labor required; (ii) the novelty and difficulty of the questions; (iii) the level of skill required to perform the legal service properly; (iv) the preclusion of employment by the attorney due to acceptance of the case; (v) the attorney's customary hourly rate; (vi) whether the fee is fixed or contingent; (vii) the time limitations imposed by the client or the circumstances; (viii) the amount involved in the case and results obtained; (ix) the experience, reputation, and ability of the attorneys; (x) the "undesirability" of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases.   *See Arbor Hill Concerned Citizens Neighborhood Ass'n* v. *Cnty. of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008) (citing *Johnson* v. *Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard* v. *Bergeron*, 489 U.S. 87 (1989)).

When determining the reasonable number of hours, a court must make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Haley* v. *Pataki*, 106 F.3d 478, 484 (2d Cir. 1997) (internal quotation marks and citation omitted). In addition, a court should examine the hours expended by counsel with a view to the value of the work product to the client's case. *See Lunday* v. *City of Albany*, 42 F.3d 131, 133-34 (2d Cir. 1994) (per curiam). The court is to exclude "excessive, redundant[,] or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." *Quaratino* v. *Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *accord Raja* v. *Burns*, 43 F.4th 80, 87 (2d Cir. 2022).

In determining whether hours are excessive, "the critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Samms* v. *Abrams*, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016) (quoting *Grant* v. *Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). And where "the billing records are voluminous, it is less important that judges attain exactitude, than that they use their experience with the case, as well as their experience with the practice of law, to assess the reasonableness of the hours spent." *Yea Kim* v. *167 Nail Plaza, Inc.*, No. 05 Civ. 8560 (GBD) (GWG), 2009 WL 77876, at *4 (S.D.N.Y. Jan. 12, 2009) (internal quotation marks and citation omitted). A court also retains the discretion to make across-the-board percentage reductions to exclude unreasonable hours,

colloquially referred to as "trimming the fat."  *See In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 237 (2d Cir. 1987); *accord Raja*, 43 F.4th at 87.

## B.   Analysis

### 1.   The Court Awards Reasonable Attorneys' Fees

#### a.   The Impact of *H.C.*

In two prior decisions, this Court considered fee petitions filed by CLF plaintiffs in IDEA cases.  *See D.P.* v. *N.Y.C. Dep't of Educ.*, No. 21 Civ. 27 (KPF), 2022 WL 103536 (S.D.N.Y. Jan. 10, 2022), *aff'd sub nom. H.C.* v. *N.Y.C. Dep't of Educ.*, 71 F.4th 120 (2d Cir. 2023); *K.E.* v. *N.Y.C. Dep't of Educ.*, No. 21 Civ. 2815 (KPF), 2022 WL 4448655, at *1 (S.D.N.Y. Sept. 23, 2022).  The Second Circuit's decision in *H.C.* explicitly affirmed this Court's fees and costs analysis in *D.P.*, and implicitly affirmed the Court's similar analysis in *K.E.*

The *H.C.* decision streamlines this Court's analysis in this Opinion in several respects.  To begin, and as discussed more fully in the next section, the Court will largely incorporate by reference its hourly rate calculations from *D.P.* and *K.E.*  In addition, the Court can quickly dispose of Plaintiff's argument that no reduction is warranted because Defendant "both unreasonably protracted the final resolutions of L.J.'s case and this action, and violated her due process rights as provided in Section 1415 of the IDEA."  (Pl. Br. 24; *see also id.* at 21-28).[10]

---

[10]    The IDEA provides that, with a single exception, "the court shall reduce ... the amount of the attorneys' fees awarded under this section" under any one of the following circumstances:

Plaintiff's efforts to invoke the unreasonable protraction exception as a shield to prevent reductions in fees are unavailing.  Even accepting Plaintiff's arguments that DOE's conduct delayed resolution of the second administrative proceeding, the Court is not willing to say that DOE "unreasonably protracted" any component of this case.  *See H.C.*, 71 F.4th at 128 ("But the LEAs' apparent disorganization in these cases does not necessarily establish that the LEA persisted when 'there was absolutely no need to continue litigating,' which would suggest unreasonable protraction."); *M.M.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 6915 (ER), 2022 WL 3043218, at *4 (S.D.N.Y. Aug. 2, 2022) ("So long as it does not make the proceedings 'longer than what ordinarily would be needed,' a delay will not constitute unreasonable protraction.  Indeed, even 'disorganization and unpreparedness' do not necessarily constitute unreasonable protraction." (citing *M.H.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 1923 (LJL), 2021 WL 4804031, at *25 (S.D.N.Y. Oct. 13, 2021))).  Moreover,

---

(i) the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy;

(ii) the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience;

(iii) the time spent and legal services furnished were excessive considering the nature of the action or proceeding; or

(iv) the attorney representing the parent did not provide to the local educational agency the appropriate information in the notice of the complaint described in subsection (b)(7)(A).

20 U.S.C. § 1415(i)(3)(F)(ii)-(iii).  That exception — on which Plaintiff's argument is predicated — is that the mandatory reductions in subparagraph F "shall not apply in any action or proceeding if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section."  *Id.* § 1415(i)(3)(G).

even assuming that DOE unreasonably protracted the dispute, such a conclusion "would not entitle CLF to more than a reasonable attorney's fee calculated based on the standards well established by the Supreme Court and in this Circuit." *M.H.*, 2021 WL 4804031, at *25 (collecting cases). As the Second Circuit confirmed in *H.C.*:

> If an LEA unreasonably protracts the proceedings —
> thereby triggering Subparagraph G — the mandatory
> reductions found in Subparagraph F would not apply,
> but the district court still would need to ensure that the
> fees awarded are reasonable and based on prevailing
> rates in accordance with § 1415(i)(3)(B)(i) and
> § 1415(i)(3)(C). The district court would not be free to
> award an unreasonable fee that a party requests. We
> agree with those circuits that have held that when a
> district court finds that the LEA unreasonably
> protracted proceedings the statute still requires the
> district court to conduct a lodestar calculation.

71 F.4th at 128. Accordingly, the Court proceeds to determine the reasonable attorneys' fees and costs in this case.

### b.    Determining Reasonable Hourly Rates

Plaintiff proposes the following hourly rates for CLF legal professionals who worked on the second administrative proceeding, IH 183334, or the instant litigation:

- CLF seeks an hourly rate of $550 for Andrew Cuddy, CLF's managing attorney, who has practiced law since 1996 and has litigated special education cases since 2001 (Cuddy Decl. ¶¶ 49-58, 73; Cuddy Reply Decl. ¶ 9);

- CLF seeks an hourly rate of $450 for attorney Kevin Mendillo, who joined the firm in 2014 and has been licensed to practice law since 2011 (Cuddy Decl. ¶¶ 9, 65, 70, 73; Cuddy Reply Decl. ¶ 9);

- ▪ CLF seeks an hourly rate of $425 for attorney Justin Coretti, who joined the firm in 2015 and has been licensed to practice law since 2013 (Cuddy Decl. ¶¶ 65, 73; Cuddy Reply Decl. ¶ 9);

- ▪ CLF seeks an hourly rate of $400 for "lead attorney" Benjamin Kopp, who joined CLF in 2018 and has been licensed to practice law since 2016 (Cuddy Decl. ¶¶ 9, 65, 73; Cuddy Reply Decl. ¶ 9; Kopp Decl. ¶¶ 1-115); and

- ▪ CLF seeks hourly rates of $225 for paralegals Allison Bunnell, Amanda Pinchak, Cailin O'Donnell, Shobna Cuddy, Allyson Green, and ChinaAnn Reeve (Cuddy Decl. ¶¶ 66-68; Cuddy Reply Decl. ¶ 9).

Plaintiff has submitted several supporting declarations with information regarding the legal experience of certain of these professionals. (*See* Cuddy Decl.; *id.*, Ex. C (resumes of certain CLF professionals);[11] Kopp Decl. ¶¶ 3-12).

Defendant objects to the hourly rates sought, arguing, among other things, that "the rates charged by Plaintiffs' counsel, both at the administrative and federal level, are excessive, and far above those typically awarded not only to attorneys of comparable experience, but to some of the very attorneys who represented Plaintiffs and seek an award of fees here." (Def. Opp. 14). Defendant also contends that the rates are excessive given the comparatively weak or non-existent opposition interposed by Defendant at the administrative stage (*id.* at 16-17); the lack of novelty or complexity in the legal issues involved (*id.* at 17); and the "fairly standard" relief obtained (*id.*).

---

[11] The Court observes that resumes were provided for some, but not all, CLF professionals, and would appreciate more detailed substantiation for the fees requested by CLF professionals in future fee petitions.

This Court undertook a comprehensive analysis of CLF's hourly rates in *D.P.* and *K.E.*, and it incorporates those analyses here by reference.  *See K.E.*, 2022 WL 4448655, at *9-13; *D.P.*, 2022 WL 103536, at *6-10.  Ultimately, the Court determined to award the following hourly rates: $400 for Mr. Cuddy, $300 for Mr. Mendillo; $280 for Mr. Coretti; $250 for Mr. Kopp; $125 for Ms. Cuddy; and $100 for the remaining paralegals.  *See id.*  The Second Circuit upheld the hourly rates awarded by the Court.  *See H.C.*, 71 F.4th at 126 ("Here, we are persuaded that there was no abuse of discretion in the district courts' calculation of reasonable attorneys' fees in each case.").  District courts in this District considering CLF fee petitions since *H.C.* have awarded comparable rates.  *See, e.g.*, *H.W.* v. *N.Y.C. Dep't of Educ.*, No. 21 Civ. 8604 (JLR), 2023 WL 5529932, at *4-9 (S.D.N.Y. Aug. 28, 2023) (awarding $380 hourly rate to Mr. Cuddy, $300 hourly rate to Mr. Mendillo, $125 hourly rate to Ms. Cuddy, and $100 hourly rate to other paralegals); *E.W.* v. *N.Y.C. Dep't of Educ.*, No. 21 Civ. 11208 (VEC) (GWG), 2023 WL 3138022 (S.D.N.Y. Apr. 28, 2023), at *5-6 (awarding $375 hourly rate to Mr. Cuddy, $180 hourly rate to Mr. Kopp, and $100 hourly rate to relevant paralegals), *report and recommendation adopted as modified*, No. 21 Civ. 11208 (VEC) (GWG), 2023 WL 4883324, at * (S.D.N.Y. July 31, 2023).

The Court did consider a slight upward adjustment in the hourly rates it awarded, to account for the passage of time.  In addition, the Court has previously recognized that the use of current, rather than historical, hourly rates can obviate the need for prejudgment interest.  *See, e.g.*, *D.P.*, 2022 WL

20

103536, at *16; *see also H.C.*, 71 F.4th at 128-29 ("The district courts that declined to award prejudgment interest did not abuse their discretion because 'delay[s] in payment' may be remedied by 'application of current rather than historic hourly rates.'" (quoting *Missouri* v. *Jenkins ex rel. Agyei*, 491 U.S. 274, 284 (1989), and citing *M.H.*, 2021 WL 4804031, at *31)).  However, in reviewing district court decisions from this District resolving fee petitions brought by CLF, the Court realized that the hourly rates that it has awarded were on the high end of the continuum, and it will therefore continue with those rates at this time.  Accordingly, the Court awards reasonable hourly rates of $400 for Mr. Cuddy, $300 for Mr. Mendillo; $280 for Mr. Coretti; $250 for Mr. Kopp; $125 for Ms. Cuddy and for Mr. Kopp when acting as a paralegal; and $100 for the remaining paralegals.

### c.    Determining Hours Reasonably Expended

The Court now proceeds to determine the reasonable number of hours expended by these legal professionals.  To review, in determining a reasonable number of hours, a court "must exclude '[h]ours that are excessive, redundant, or otherwise unnecessary,' allowing only those hours that are 'reasonably expended.'" *Hernandez* v. *Berlin Newington Assocs., LLC*, 699 F. App'x 96, 97 (2d Cir. 2017) (summary order) (quoting *Kirsch* v. *Fleet St., Ltd.*, 148 F.3d 149, 172-73 (2d Cir. 1998)); *see also Wise* v. *Kelly*, 620 F. Supp. 2d 435, 442 (S.D.N.Y. 2008) ("If the court finds that the fee applicant's claim is excessive or insufficiently documented, or that time spent was wasteful or redundant, the court may decrease the award, either by eliminating compensation for

21

unreasonable hours or by making across-the-board percentage cuts in the total hours for which reimbursement is sought." (internal citations omitted)).

In prior fee petitions, this Court has alternated between the use of an across-the-board percentage reduction and the disallowance of certain hours billed. *Compare D.P.*, 2022 WL 103536, at *10 (disallowing certain time entries billed), *with K.E.*, 2022 WL 4448655, at *14 ("In this case, the Court has determined to consider separately the administrative and litigation components of this case, reduce certain entries for travel time, and otherwise impose specific percentage reductions in the hours sought."). Both are acceptable methods of arriving at a reasonable number of hours, as the *H.C.* Court recognized. *H.C.*, 71 F.4th at 126. The Court now considers separately the administrative and litigation components of this case.

### i.    The Administrative Proceeding (IH 183334)

Plaintiff seeks reimbursement for the following hours billed by CLF legal professionals to the administrative proceeding:

- Andrew Cuddy (attorney): 7.3
- Kevin Mendillo (attorney): 3.8
- Justin Coretti (attorney): 0.1
- Benjamin Kopp (attorney): 79.6
- Allison Bunnell (paralegal): 0.7
- Amanda Pinchak (paralegal): 6.1
- Cailin O'Donnell (paralegal): 0.7
- Shobna Cuddy (paralegal): 1.2

22

(Cuddy Decl. ¶ 73 & Ex. A; Cuddy Reply Decl. ¶ 9 & Ex. U-V).  In sum, Plaintiff claims 90.8 hours of attorney time and 8.7 hours of paralegal time for the administrative component of this case.  Substantiation for this request includes CLF billing records and summaries for the relevant time period.  (*Id.*).  Mr. Cuddy also advises that, with respect to the administrative component of the case, CLF has imposed discretionary reductions in the amount of 6.3 hours and $2,057.50.  (Cuddy Decl. ¶ 4 & Ex. A).  DOE counters that CLF billed excessively for drafting an 8-page due process complaint, as well as for hearing preparation, client meetings, post-hearing briefing, post-hearing procedures and implementation, administrative tasks, and the review of billing statements.  (Def. Opp. 19-21 & Appendix).

The Court has reviewed with care CLF's billings for the administrative component of the case, which encompassed client intake; evaluations of documents; preparation of a hearing request; preparation for and attendance at hearings; post-hearing submissions; review of the IHO's FOFD; and numerous issues of implementation.  (Cuddy Decl., Ex. A).  The billing statements are clear as to the tasks performed and the time allotted thereto by each legal professional; while there is a degree of block-billing, it occurs mostly on dates in which a single CLF professional was billing time to the matter.  *See generally E.S.* v. *Katonah-Lewisboro Sch. Dist.*, 796 F. Supp. 2d 421, 432 (S.D.N.Y. 2011) ("The practice of block billing, although not forbidden, makes it 'difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided[.]'" (internal citations omitted)),

23

*aff'd sub nom. E.S. ex rel. B.S.* v. *Katonah-Lewisboro Sch. Dist.*, 487 F. App'x

619 (2d Cir. 2012) (summary order).[12]

The Court accepts CLF's representations that clerical and similarly

routine matters were handled in the main by paralegals, and that CLF has

already implemented discretionary reductions to the fees it seeks.  That said,

the Court observes that certain billing entries are unreasonable.  For example,

excessive hours were billed by Mr. Kopp for drafting the due process complaint

and the post-hearing hearing brief, given CLF's demonstrated experience in

this area and the relatively straightforward legal issues in play.  Similarly, there

appears to have been little benefit to Plaintiff from CLF's precipitous decision to

prepare and submit a summary judgment motion that the IHO refused to even

consider.  And the Court shares Defendant's confusion that CLF would need

2.3 hours to review its own contemporaneous billing statements.  (Def.

Opp. 20).  Accordingly, the Court reduces CLF's billings by 20% to account for

the firm's excessive billing.

---

[12]     In contesting the reasonableness of CLF's proffered hourly rates, Defendant asserted
that "[t]he impartial hearing was uncontested as to one school year and only minimally
contested as to a second school year, which demonstrates that 'the skill requisite to
perform the legal service properly' was minimal, certainly less that that needed in other
Section 1983 civil rights cases."  (Def. Opp. 16).  Defendant does not suggest that the
hours billed by CLF to the administrative component of this case should be reduced on
similar grounds.  To the extent that such an argument is folded into Defendant's other
challenges to the hours billed, the Court reiterates its prior observation that "[h]aving
not advised Plaintiff's counsel of the precise nature of its opposition, and having refused
to stipulate to any issues prior to the hearing …, Defendant is on the hook for the
reasonable costs of preparing for that hearing."  *D.P.* v. *N.Y.C. Dep't of Educ.*, No. 21 Civ.
27 (KPF), 2022 WL 103536, at *9 (S.D.N.Y. Jan. 10, 2022) (collecting cases), *aff'd sub
nom. H.C.* v. *N.Y.C. Dep't of Educ.*, 71 F.4th 120 (2d Cir. 2023).  What is more, the Court
rejects Defendant's foundational argument that it was fully compliant with the IHO's
directives, such that litigation (and discovery) were unnecessary.  (*See generally* Def.
Opp. 13).

In light of the above determinations, the Court awards fees to Plaintiff's counsel for the administrative component of the case as follows:

| Timekeeper | Reasonable Rate | Reasonable Hours Billed | Amount |
|---|---|---|---|
| A.Cuddy | $400.00 | 5.84 | $2,336.00 |
| Mendillo | $300.00 | 3.04 | $912.00 |
| Coretti | $280.00 | 0.08 | $22.40 |
| Kopp | $250.00 | 63.68 | $15,920.00 |
| Bunnell | $100.00 | 0.56 | $56.00 |
| Pinchak | $100.00 | 4.88 | $488.00 |
| O'Donnell | $100.00 | 0.56 | $56.00 |
| S.Cuddy | $125.00 | 0.96 | $120.00 |
| | | Total: | $19,910.40 |

### ii.    The Federal Litigation

The IDEA gives a prevailing parent the right to recover their reasonable attorneys' fees and costs incurred in a federal court action related to vindicating their rights, including their right to recover attorneys' fees.  *See C.D.* v. *Minisink Valley Cent. Sch. Dist.*, No. 17 Civ. 7632 (PAE), 2018 WL 3769972, at *11 (S.D.N.Y. Aug. 9, 2018); *G.T.*, 2020 WL 1516403, at *9 ("a plaintiff may seek 'fees-on-fees' under the IDEA").  "Although '[a] request for attorney's fees should not result in a second major litigation[,]' neither should the threat that counsel will not receive its reasonable fees be a bludgeon that can be used by the losing school district to coerce the parent at the

25

administrative stage to an inadequate settlement or to a compromise of the parent's rights." *M.H.*, 2021 WL 4804031, at *21 (internal citations omitted).

Plaintiff seeks reimbursement for the following hours billed by CLF legal professionals for their work on the instant litigation:

- Andrew Cuddy (attorney): 12.3

- Kevin Mendillo (attorney): 0.1

- Benjamin Kopp (attorney): 114.3 (as attorney) + 1.6 (as paralegal)[13]

- Allyson Green (paralegal): 0.8

- Cailin O'Donnell (paralegal): 0.4

- ChinaAnn Reeve (paralegal): 4.5

- Shobna Cuddy (paralegal): 4.3

(Cuddy Reply Decl. ¶ 9 & Ex. A). In sum, after implementing discretionary reductions of 2.1 hours and $762.50, Plaintiff claims 126.7 hours of attorney time and 11.6 hours of paralegal time, seeking a total award of $55,140 for the federal component of this matter. (*Id.*).

Here, too, Defendant objects. As with the administrative component of the case, Defendant complains about ostensibly clerical tasks billed by attorneys. (Def. Opp. 21). Defendant also protests the time billed to discovery in the federal action. (*Id.* at 23 ("As explained above, discovery was entirely unnecessary because DOE was complying with the FOFD when this federal action was brought. Moreover, and significantly, discovery has done nothing to

---

[13]     CLF accepted Defendant's argument that 1.6 hours billed at an attorney rate "could have been done applying paralegal time," and thus revised Mr. Kopp's billing records to reflect that. (Cuddy Reply Decl. ¶¶ 7, 9).

advance Plaintiff[']s implementation claims")).  However, the bulk of

Defendant's challenge is directed to the time billed to drafting the instant fee

petition.  (*Id.* at 22-23).

This Court explained in *D.P.* how it is that fee petitions in IDEA cases can

approximately, or even exceed, the underlying administrative proceedings:

> The Court has carefully considered both sides'
> arguments in making its fee determinations, and the
> fact that this Opinion will satisfy neither side is a sure
> sign of its correctness.  However, the Court observes
> that there is little utility in the current stalemate
> between the parties.  The continued adherence by
> Plaintiff's counsel to aspirational hourly rates that no
> court has awarded will lead only to further opinions
> significantly discounting those rates.  And on that point,
> this Court has reviewed scores of fee petition decisions
> from sister courts in this District, including fee petitions
> in IDEA cases, and it remains unpersuaded by
> Plaintiff's counsel's claims of fundamental flaws in their
> analyses.  Conversely, DOE can continue playing
> hardball by refusing to settle attorneys' fee demands
> from counsel in IDEA cases; however, the fact that
> courts frequently award attorneys' fees incurred in the
> resulting fee litigation (i.e., "fees on fees") means, as a
> practical matter, that the difference between the initial
> fee demand and the reviewing court's ultimate fee award
> grows ever smaller once litigation is filed.

*D.P.*, 2022 WL 103536, at *6.  Courts in this District remain attentive to

overbilling at the federal level.  As a sister court in this District recently

observed, "[i]n gauging reasonable fees, courts also generally 'limit awards for

time spent litigating an IDEA fee application to a fraction ... of the time spent

on the underlying administrative proceeding.'"  *S.K.* v. *N.Y.C. Dep't of Educ.*,

No. 21 Civ. 7291 (JLR), 2023 WL 2456693, at *11 (S.D.N.Y. Mar. 10, 2023)

(internal citations omitted), *reconsideration denied*, No. 21 Civ. 7291 (JLR),

2023 WL 3646935 (S.D.N.Y. May 25, 2023); *see also M.D.* v. *N.Y. Dep't of Educ.*, No. 20 Civ. 6060 (LGS), 2021 WL 3030053, at *6 (S.D.N.Y. July 16, 2021) ("In light of this case's low degree of complexity — Plaintiff filed the complaint, followed by service and summary judgment briefing on the straightforward issues of fees — a reduction of attorney hours by fifty percent achieves rough justice."), *aff'd in part, rev'd in part and remanded sub nom. H.C.* v. *N.Y.C. Dep't of Educ.*, 71 F.4th 120 (2d Cir. 2023); *B.B.* v. *N.Y.C. Dep't of Educ.*, No. 17 Civ. 4255 (VEC) (SDA), 2018 WL 1229732, at *3 (S.D.N.Y. Mar. 8, 2018) ("Although the Court concurs with Plaintiffs' arguments that attorneys who practice in the area of IDEA and other similar civil rights areas must be adequately compensated for their time, fee-shifting statutes are not a license to soak one's opponent or to engage in a highly inefficient practice of law. … The legal basis for fee petitions is well-plowed acreage, leaving the task of the attorney to marshal the facts to support the number of hours expended on the underlying matter.").

In prior cases, this Court has significantly reduced the hours for which attorneys' fees were awarded in IDEA fee petitions. *See, e.g.*, *D.P.*, 2022 WL 103536, at *14-15 (reducing lead counsel's time from 64 to 40 hours based on excessive time spent drafting submissions). This case, however, is different. The Court does not fault Defendant for holding different views from Plaintiff concerning the reasonableness of the fees sought or the utility of discovery. And, to a degree, the Court agrees with Defendant that CLF billed excessive hours to drafting the submissions in connection with the instant motion.

However, the Court is concerned about the insouciance with which defense counsel treated the Court's orders regarding discovery.  More pointedly, given its own firsthand observations of defense counsel's conduct, the Court echoes much of Plaintiff's sentiment regarding this particular matter: "Here, DOE has nobody but itself to blame for the hours expended in eliciting DOE's participation, preparing for what DOE indicated would be a contested hearing, working through DOE's numerous objections and demands, enforcing the FOFD to the extent CLF could reasonably assist L.J., seeking DOE's participation (and even position) for settlement discussions and discovery, and now preparing a motion after DOE's failure to seek authority to negotiate settlement in over a year."  (Pl. Br. 34).

In short, balancing CLF's hours billed to discovery and to efforts at implementation (which were not excessive, but rather were required by defense counsel's conduct) with CLF's hours billed to drafting (which were excessive, given the straightforward nature of the facts and law), the Court will reduce the hours sought by 20% to arrive at a reasonable amount, as follows:

| Timekeeper | Reasonable Rate | Reasonable Hours Billed | Amount |
|---|---|---|---|
| A.Cuddy | $400 | 9.84 | $3,936.00 |
| Mendillo | $300 | 0.08 | $24.00 |
| Kopp (as attorney) | $250 | 91.44 | $22,860.00 |
| Kopp (as paralegal) | $125 | 1.28 | $160.00 |
| Green | $100 | 0.64 | $64.00 |
| O'Donnell | $100 | 0.32 | $32.00 |

| Reeve | $100 | 3.6 | $360.00 |
| S.Cuddy | $125 | 3.44 | $430.00 |
| | | **Total:** | **$27,866.00** |

### 2. The Court Awards Reasonable Costs and Expenses

Plaintiff seeks $463.57 in reimbursement for costs incurred in the administrative component of this case, including $188.00 for faxing (at $2.00 per page), $5.07 for postage, and $270.50 for copying and printing (at 50¢/page); in addition, Plaintiff seeks $768.30 in reimbursement for costs incurred in the instant litigation, including $402.00 in filing fees and $366.30 in transcript fees.  (Cuddy Decl. ¶ 73 & Ex. A; Cuddy Reply Decl. ¶ 9 & Ex. U, V, W).  Defendant acknowledges that the filing and postage fees are recoverable costs, but seeks disallowance of transcript fees and steep reductions to the printing and faxing costs.  (Def. Opp. 4, 26-28).

A district court may award reasonable costs to the prevailing party in IDEA cases.  *See* 20 U.S.C. § 1415(i)(3)(B); *see also Arlington Cent. Sch. Dist. Bd. of Educ.* v. *Murphy*, 548 U.S. 291, 297-98 (2006) (holding "costs," as used in 20 U.S.C. § 1415(i)(3)(B), to refer to the list set out in 28 U.S.C. § 1920, the statute governing taxation of costs in federal court); *H.C.* v. *N.Y.C. Dep't of Educ.*, No. 20 Civ. 844 (JLC), 2021 WL 2471195, at *11 (S.D.N.Y. June 17, 2021) ("A district court may award reasonable costs to the prevailing party in IDEA cases." (quoting *C.D.*, 2018 WL 3769972, at *12)), *aff'd*, 71 F.4th 120 (2d Cir. 2023).

The Court approves without further discussion Plaintiff's requests for reimbursement of filing fees and postage, totaling $407.07.  The Court will also permit recovery of the transcript fees, which aided the Court in this litigation, totaling $366.30.  As for printing and copying costs, courts in this District generally limit such costs to 10 to 15 cents per page, though the practice is not uniform.  *See, e.g.*, *R.G.* v. *N.Y.C. Dep't of Educ.*, No. 18 Civ. 6851 (VEC), 2019 WL 4735050, at *6 (S.D.N.Y. Sept. 26, 2019).  Adopting the reasoning of Judge Liman in *M.H.*, this Court will award printing and copying costs at a rate of 20 cents per page, resulting in a printing and photocopying award of $108.20.  *M.H.*, 2021 WL 4804031, at *27.  The Court disallows, however, Plaintiff's request for faxing costs.  *See S.J.*, 2020 WL 6151112, at *7 ("In addition, the Court declines to award fax charges at $2 per page as such charges are not reasonable.").  As a result, the Court awards total costs of **$881.57.**

### 3.    The Court Awards Post-Judgment Interest

Finally, the Court grants Plaintiff's request for post-judgment interest.  "Pursuant to 28 U.S.C. § 1961, '[t]he award of post-judgment interest is mandatory on awards in civil cases as of the date judgment is entered.'"  *Tru-Art Sign Co.* v. *Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017) (internal citation omitted); *accord H.C.*, 2021 WL 2471195, at *12; *S.J.*, 2021 WL 100501, at *5.

31

## CONCLUSION

For the reasons set forth above, the Court GRANTS IN PART Plaintiff's motion for summary judgment on the issue of attorneys' fees and costs as follows:  The Court awards attorneys' fees in the aggregate amount of **$47,776.40**, and costs in the amount of **$881.57**.  The Clerk of Court is directed to terminate the motion pending at docket entry 50.

To the extent that there remain categories of relief specified in the FOFD that Defendant has not satisfied, Plaintiff is directed to file a letter brief outlining those categories of relief on or before **September 27, 2023**. Defendant is directed to file a letter brief responding to any letter submitted by Plaintiff on or before **October 18, 2023**.

SO ORDERED.

Dated:   September 6, 2023
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge